UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CARLA M. THRASHER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | No. 1:10-cv-265<br><br>*Collier / Lee* |

## **REPORT AND RECOMMENDATION**

Plaintiff Carla M. Thrasher brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings [Doc. 13] and Defendant has moved for summary judgment [Doc. 17]. Plaintiff argues that her claim should be remanded to the Administrative Law Judge ("ALJ") because he improperly rejected the opinion of her treating physician and failed to pose a proper hypothetical to the vocational expert ("VE"). For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 17] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for DIB on July 10, 2008, alleging disability as of July 3, 2008 due to rheumatoid arthritis (Transcript ("Tr.") 174-75, 208). Plaintiff's claim was denied initially and upon reconsideration and she requested a hearing before the ALJ (Tr. 97-101, 106-09). The ALJ held a first hearing on September 3, 2009 (Tr. 68-91). At the first hearing, the ALJ indicated he needed to obtain more medical evidence to form a residual functional capacity ("RFC") determination because the severity of Plaintiff's symptoms was not reflected in her objective medical records. Accordingly, a second hearing was held on November 19, 2009 to take the testimony of a medical expert, Dr. Edward Griffin (Tr. 30-67). The ALJ issued his decision on January 14, 2010 and determined Plaintiff was not disabled (Tr. 15-25). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff filed the instant action on September 20, 2010 [Doc. 2].

## II. FACTUAL BACKGROUND

### A. Education and Background

Plaintiff obtained an associate college degree and worked as an x-ray technician and a teacher's assistant before she stopped working due to disability (Tr. 79-81). At the September hearing, Plaintiff testified that she quit her job in July 2008 (after previously reducing her schedule to three days a week) because of constant pain and fatigue, including pain and swelling that made it difficult for her to use her hands (Tr. 84-85, 87). Plaintiff testified that her joint pain was constant, that her hands swelled badly, and that she could not sleep with any joints bent (Tr. 87-88). Plaintiff had tried several medications, with difficulties due to adverse side effects, and she was taking methotrexate, which had the adverse side effect of unexpected bowel movements (Tr. 85-86).

2

Plaintiff testified that she used to run and work out every day, but her fatigue was profound compared to her life before disability (Tr. 88-89).

   **B.   Medical Records**

Plaintiff complained of joint pain and swelling in early 2006 and indicated that the pain improved with medications (Tr. 269). Plaintiff's doctor referred her to a rheumatologist, Dr. Richard Brackett in January 2007 (Tr. 309). Plaintiff complained to Dr. Brackett about joint pain in her hands and knees, joint stiffness for two to four hours in the morning, "gelling" of joints after periods of inactivity, swelling, and Raynaud's (Tr. 309). Plaintiff had previously taken non-steroid anti-inflammatory drugs, prednisone, azulfidine, and Plaquenil (Tr. 309). During the examination, Dr. Brackett found that Plaintiff had synovitis (inflammation of the joints) in her hands and wrists, but Plaintiff otherwise had a normal examination and had a full range of motion in all joints (Tr. 310-11). Dr. Brackett diagnosed Plaintiff with rheumatoid arthritis and ordered lab tests (Tr. 311).

Two weeks later, Dr. Brackett reported that serology was negative and x-rays were consistent with early synovitis (Tr. 307-08). He prescribed Humira (Tr. 308). Plaintiff was negative for synovitis and pain in her March and June 2007 visits, and Dr. Brackett's examination was otherwise unchanged (Tr. 301-02, 304-05). During the June visit, Plaintiff reported that her morning joint stiffness was less than 30 minutes (Tr. 300). In August 2007, Dr. Brackett reported that Plaintiff was compliant with her treatment, but was positive for synovitis and was experiencing foot pain (Tr. 298-99). Plaintiff reported morning joint stiffness for one to two hours (Tr. 297). In October 2007, Plaintiff's compliance with treatment was only fair and Dr. Brackett noted she was positive for synovitis, but she reported joint stiffness for less than one hour in the morning (Tr. 293). By December 2007, Plaintiff's morning joint stiffness had decreased to less than 30 minutes and she

described her discomfort as mild (Tr. 289). Dr. Brackett characterized Plaintiff's symptomology as episodic flare-ups interspersed with symptom-free periods (Tr. 289). In March 2008, morning joint stiffness was less than 45 minutes and her discomfort was severe, but Plaintiff was not entirely compliant with her medication and was skipping some doses (Tr. 285). Dr. Brackett discontinued her Humira prescription and adjusted her methotrexate prescription (Tr. 288). Dr. Brackett noted that Plaintiff was having difficulty working two days a week and he and Plaintiff discussed applying for disability benefits (Tr. 287). In April 2008, Plaintiff was compliant with her treatment, her morning joint stiffness was less than one hour and her discomfort was moderate (Tr. 281). Dr. Brackett's examination was negative for synovitis and Dr. Brackett noted that Plaintiff's symptomology was stable and nonprogressive (Tr. 281-83). In July 2008, Plaintiff was taking her medication as directed and her condition was stable with no change in examination findings (Tr. 277-79). Dr. Brackett noted, however, that Plaintiff was "unable to work even a sedentary job" (Tr. 279).

In October 2008, Dr. Brackett completed a questionnaire in which he opined that Plaintiff could not sit, stand, walk, or repetitively use her hands without pain, and that Plaintiff's pain or pain medication likely adversely affected Plaintiff's concentration and her ability to sleep (Tr. 382-83). Dr. Brackett opined that Plaintiff could not lift more than five pounds, could not stand for longer than one hour, and could not sit for longer than two hours (Tr. 383). In November 2008, Plaintiff reported one to two hours of morning joint stiffness, moderate discomfort, worsening of symptoms, and severe fatigue (Tr. 427). Dr. Brackett's examination was positive for synovitis and pain and he prescribed Enbrel (Tr. 428-29). In December 2008 and February 2009, examination findings were largely the same (Tr. 417-18, 422-24). In May 2009, Plaintiff's morning joint stiffness lasted less

4

than 15 minutes, Dr. Brackett noted her symptomology had improved, and her discomfort was mild (Tr. 450). Plaintiff was negative for synovitis and pain (Tr. 452). In September 2009, Plaintiff was again negative for synovitis, but Dr. Brackett noted that Plaintiff could not work (Tr. 444-45). This same month, Dr. Brackett wrote a letter stating that Plaintiff had rheumatoid arthritis affecting the majority of her joints (Tr. 436). He wrote that "[d]ue to pain, swelling and stiffness she is unable to do any work including sedentary activities" (Tr. 436).

### C. Hearing Testimony

At the November hearing, Dr. Richard Griffin testified as a medical expert. Dr. Griffin testified that although Plaintiff had arthritis, there was no conclusive evidence of rheumatoid arthritis (Tr. 39). Dr. Griffin stated that Plaintiff's x-rays were negative for rheumatoid arthritis and that Plaintiff lacked the classic rheumatoid deformities (Tr. 39-40). The results of Plaintiff's blood tests were negative or normal to mildly elevated (Tr. 40-41). Dr. Griffin testified that the only thing in the record to support a finding of rheumatoid arthritis was Dr. Brackett's findings that Plaintiff had synovitis, but Dr. Griffin questioned the findings of synovitis, considering that Plaintiff did not have any active inflammation, her sed rates were normal, the serology was unconvincing, and the diagnostic imagery was unconvincing (Tr. 44). Dr. Griffin testified that it was not possible to have synovitis with normal sed rates (Tr. 44). Dr. Griffin noted that the objective evidence in the record completely contradicted Dr. Brackett's opinion that Plaintiff could not work (Tr. 46-47). But if he only considered Plaintiff's history and Dr. Brackett's findings, Dr. Griffin opined that Plaintiff could lift and carry 15 pounds occasionally and eight to ten pounds frequently; had no limitations in sitting, standing or walking; could occasionally perform simple manipulation with her hands; and should not be exposed to a cold work environment (Tr. 45-46).

The ALJ posed a question to the VE about an individual with no limitations as to the lower extremities but who was limited to pushing and pulling no more than 15 pounds and could only occasionally use her hands (Tr. 61). The VE testified that in the light work category, this individual could work as a counter clerk, with 1,500 jobs in the region (400,000 nationally), a retail sales clerk, with 1,200 jobs in the region (500,000 nationally), or as an usher or crossing guard, with 1,600 jobs in the region (17,000 nationally) (Tr. 61-63).

## III.    ALJ'S FINDINGS

### A.    Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(I-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See*

6

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

      **B.**     **ALJ's Application of the Sequential Evaluation Process**

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since July 3, 2008 (Tr. 17). At step two, the ALJ found Plaintiff had "severe impairments" including: osteoarthritis; rheumatoid arthritis; and adjustment disorder with depressed mood (Tr. 17). The ALJ determined these impairments were severe because they more than minimally limited Plaintiff's ability to perform basic work activities (Tr. 17). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 17). More specifically, the ALJ found Plaintiff's physical impairments did not meet or medically equal the criteria of Listings 1.04, 14.09 or other listings in sections 1.00 and 14.00, and that the Disability Determination Service medical examiners had also concluded that no listing was met or equaled (Tr. 18). The ALJ determined Plaintiff had the RFC to perform light work and had no limitations as to sitting, standing or walking, but he limited Plaintiff as follows: she can only lift, carry, push or pull 15 pounds occasionally and ten pounds frequently; she can only occasionally perform tasks that require no more than frequent repetitive assembly, manipulation and dexterity, on an occasionally sustained basis; she can only perform occasional word processing and writing messages; and that she should not be exposed to a cold work environment (Tr. 19). At step four, the ALJ found Plaintiff was unable to perform any of her past relevant work (Tr. 23). At step five, the ALJ noted Plaintiff was age 39, a younger individual, as of the disability onset date (Tr. 23). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 24).

7

This finding led to the ALJ's determination that Plaintiff was not under a disability as of July 3, 2008 (Tr. 25).

## IV. ANALYSIS

Plaintiff challenges the ALJ's decision on two grounds. First, she argues that the ALJ erred by rejecting the opinions of Dr. Brackett in favor of the opinion provided by medical expert Dr. Griffin. Second, Plaintiff argues that the RFC he assigned to Plaintiff is confusingly ambiguous, such that the VE could not accurately determine the effect of Plaintiff's limitations and the Commissioner could not meet the burden of establishing that there is other work in the national economy which Plaintiff can perform.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial

8

evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B.     Dr. Brackett's Opinion

Plaintiff argues that the ALJ was required to give more weight to the opinion of Dr. Brackett, Plaintiff's treating physician, than to Dr. Griffin, who testified as a medical expert without ever examining Plaintiff [Doc. 14 at PageID#: 34-35]. Plaintiff asserts the ALJ did not provide any analysis to support his decision to reject Dr. Brackett's opinion beyond his finding that the opinion is not supported by Dr. Brackett's own treatment notes [*id.* at PageID#: 38]. Plaintiff argues that Dr. Brackett's opinion was well-supported by the clinical observations and other objective medical evidence [*id.*]. In addition to his opinion that Plaintiff could not even perform sedentary work (Tr. 436), Dr. Brackett opined that Plaintiff could lift less than five pounds, could stand less than one

9

hour at a time, and could sit for less than two hours at a time (Tr. 383). In contrast, the ALJ found that Plaintiff had no limitations as to her lower extremities but could perform light work subject to upper extremity limitations, including only lifting, carrying, pushing or pulling up to 15 pounds (Tr. 19).

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting SSR 96-2p). Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial

10

evidence, unless the error is de minimis. *Id.* at 544, 547.

The ALJ found that Dr. Brackett's opinions were based upon Plaintiff's subjective complaints, which were unsupported and inconsistent with Dr. Brackett's treatment notes and other objective medical evidence in the record (Tr. 21). The ALJ analyzed Dr. Griffin's testimony extensively and noted that this testimony, during which Dr. Griffin stated that the diagnosis of rheumatoid arthritis was unconvincing, was more consistent with Dr. Brackett's examinations of Plaintiff, which showed mostly normal findings with only occasional synovitis and a generally stable condition (Tr. 22). The ALJ noted Plaintiff's occasional noncompliance with medication, which generally resulted in a worsening of her symptoms (Tr. 22). The ALJ found Dr. Brackett's opinion was inconsistent with the laboratory test results and diagnostic imagery findings (Tr. 22). In addition, the ALJ noted Dr. Brackett's statement that Plaintiff cannot do any work, including sedentary activities, was a conclusion reserved to the ALJ and was therefore not entitled to any particular weight (Tr. 22). *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010); *see also* 20 C.F.R. § 404.1527(e)(1). The ALJ granted little weight to Dr. Brackett's opinion, explaining that it was inconsistent and contradicted by his own treatment notes, the objective medical evidence, and Dr. Griffin's testimony (Tr. 23). The ALJ did, however, craft an RFC which incorporated the limitations Dr. Griffin indicated would be necessary if Dr. Brackett's opinions of Plaintiff's abilities were given weight[1] (Tr. 21-22).

I **FIND** that the ALJ provided good reasons for the little weight he gave to Dr. Brackett's opinion and that substantial evidence supports the ALJ's decision to afford greater weight to the

---

[1] Dr. Griffin initially testified that the record did not support any limitations due to rheumatoid arthritis (Tr. 45).

testimony of Dr. Griffin. The ALJ solicited the testimony of Dr. Griffin specifically because he could not square Dr. Brackett's extremely limiting opinions of Plaintiff's work abilities with the objective medical evidence in the record, which showed mostly normal findings, mostly normal lab results, and a generally stable condition. Upon hearing Dr. Griffin's testimony, the ALJ reasonably determined substantial evidence in the record favored Dr. Griffin's evaluation of Plaintiff's condition. Although Dr. Griffin testified that the evidence in the record did not necessarily support a diagnosis of rheumatoid arthritis and that Plaintiff had no limitations due to rheumatoid arthritis, the ALJ solicited testimony from Dr. Griffin as to Plaintiff's limitations if he incorporated Plaintiff's history and Dr. Brackett's documented findings. By soliciting this testimony and including those limitations in his RFC, the ALJ gave Plaintiff the benefit of the doubt as to the subjective complaints she reported to Dr. Brackett. As noted above, the ALJ was not required to afford any weight to Dr. Brackett's opinion that Plaintiff could not perform even sedentary work activities, and I **FIND** that he properly assigned little weight to Dr. Brackett's opinion in favor of assigning greater weight to Dr. Griffin's testimony because the former was at odds with the objective medical evidence in the record.

### C.     Plaintiff's RFC

Plaintiff's second argument concerns the ALJ's RFC determination, which included language that Plaintiff is "limited to occasionally performing tasks that require no more than frequent repetitive assembly, manipulation and dexterity, on an occasionally sustained basis" (Tr. 19). Plaintiff argues that the Commissioner did not satisfy his burden to establish that there is other work she can perform because the ALJ's hypothetical question to the VE did not accurately portray Plaintiff's mental and physical impairments [Doc. 14 at PageID#: 39]. Plaintiff asserts that this

12

language in the RFC is so ambiguous that it would preclude an accurate vocational statement as to Plaintiff's limitations and the VE was in fact confused during the hearing [*id.*].

A VE's testimony in response to a hypothetical is substantial evidence regarding the existence of jobs that the claimant can perform as long as the hypothetical question "accurately portrays [her] individual physical and mental impairments." *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The hypothetical need not include all the claimant's diagnoses, but should merely reflect the claimant's RFC (as previously determined by the ALJ) as well as her vocational factors of age, experience, and education. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

As noted above, the ALJ found that Plaintiff would be limited to "occasionally performing tasks that require no more than frequent repetitive assembly, manipulation and dexterity, on an occasionally sustained basis" (Tr. 19). This limitation was originally proposed by Dr. Griffin, when he testified that Plaintiff could perform frequent repetitive manipulation occasionally, but she could not do this repeatedly or sustain such an action (Tr. 45). When the ALJ posed the question to the VE during the second hearing, the ALJ clarified for the VE that Plaintiff could not use her hands more than occasionally and could handle frequent reaching and handling, but would not be able to do those activities over and over, i.e., that Plaintiff could alternate between tasks like answering the phone, typing, or writing up an order (Tr. 64). Therefore, Plaintiff could perform a variety of tasks involving her hands, each for a brief amount of time, but collectively they could not add up to more than occasional use (Tr. 64). As such, other time would need to be spent doing other functions, like talking to people or observing things (Tr. 64).

I **FIND** the ALJ's RFC statement is not ambiguous and the ALJ's hypothetical question to

the VE accurately portrayed Plaintiff's limitations. The RFC statement indicates that Plaintiff cannot, as a general matter, use her hands more than occasionally. Within this general statement, Plaintiff is also limited in that she cannot perform frequent repetitive tasks on more than an occasionally sustained basis. This squares with the explanation of the limitation as proposed by Dr. Griffin. Furthermore, the conversation between the ALJ and VE resolved any ambiguities for the VE on this limitation such that she was able to provide an accurate statement as to the jobs available in the national economy for a claimant who could use her hands only occasionally with an additional hand-related limitation. Based on the VE's testimony, the ALJ was able to identify jobs in the national economy for a claimant with Plaintiff's limitations (Tr. 24). Therefore, the VE's testimony is substantial evidence that Plaintiff could perform jobs existing in the national economy. *See Varley*, 820 F.2d at 779. Accordingly, I **CONCLUDE** the Commissioner met his burden to establish that there is other work Plaintiff can perform.

V. **CONCLUSION**

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** that:[2]

> (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**.

---

[2] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(2) The Commissioner's motion for summary judgment [Doc. 17] be **GRANTED**.

(3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

15